### UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH

BANKRUPTCY JUDGE

(973) 645-4693

Fax: (973) 645-2606

**FILED**

JAMES J. WALDRON, CLERK

**MAR 28 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

### NOT FOR PUBLICATION

March 28, 2006

### LETTER OPINION
### ORIGINAL FILED WITH THE CLERK OF THE COURT

Lowenstein Sandler PC
S. Jason Teele, Esq.
65 Livingston Avenue
Roseland, New Jersey  07068
***Counsel to the Debtor and Debtor-in-Possession***
*** Patriot Contracting Corporation***

Christopher J. Christie, Esq.
United States Attorney
District of New Jersey
Robert Saal, Esq.
Special Assistant United States Attorney
One Newark Center, Suite 1500
Newark, New Jersey  07102-5224
***Counsel for the United States of America***

Joel A. Siegel, Esq.
70 Lafayette Street
New York, New York  10013
***Counsel to Merrill Lynch Business Financial Services, Inc.***

Page 2
March 28, 2006

**Re:    Patriot Contracting Corporation**
**       Case No. 05-33190 (DHS)**

Dear Counsel:

Before the Court is a motion filed by the United States of America, Internal Revenue Service ("IRS")

seeking to deny the Debtor Patriot Contracting Corporation's (the "Debtor") use of cash collateral or, in the

alternative, for adequate protection under § 363(e) of the Bankruptcy Code.  The Debtor filed opposition to

the motion, which was joined in by Merrill Lynch Business Financial Services, Inc. ("MLBFS").  For the

reasons that follow, the motion filed by the IRS is hereby denied.

**I.      Procedural History and Statement of Facts**

On July 18, 2005, the Debtor, a New Jersey corporation, filed a voluntary petition for relief under

Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate as a debtor-in-possession pursuant

to 11 U.S.C. §§ 1107(a) and 1108.  No trustee, examiner or statutory committee has been appointed in this

case.

Prior to filing its bankruptcy petition, the Debtor obtained a working capital line of credit and a term

loan (collectively the "Loans") from MLBFS.  The Debtor granted MLBFS a security interest in substantially

all of its assets, which MLBFS perfected on March 27, 2001 by filing a Uniform Commercial Code ("UCC")

financing statement.  The UCC financing statement defined the security interest as follows:

> All Accounts, Chattel Paper, Contract Rights, Inventory, Equipment,
> Fixtures, General intangibles, Deposit Accounts, Documents, Instruments,
> Investment Property and Financial Assets of Debtor, howsoever arising,
> whether now owned or existing or hereafter acquired or arising, and
> wherever located; together with all parts thereof (including spare parts),
> all accessories and accessions thereto, all books and records (including

Page 3
March 28, 2006

> computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds).

Pursuant to the financing statement the Debtor agreed not to further encumber any of the property constituting the security interest without the prior written consent of MLBFS, except in the case of certain "Permitted Liens."[1]  In addition, the Debtor's principals guaranteed the Debtor's obligations to MLBFS prior to the petition date.  As of the petition date, the Debtor's assets totaled $1,422,500.00, while the outstanding balance owed to MLBFS was $2,219,661.61.  The IRS is listed in the Debtor's petition as the holder of five of the twenty largest unsecured claims.

Approximately three years after MLBFS perfected its security interest, on February 21, 2004, August 12, 2004, March 28, 2005 and April 14, 2005, the IRS filed four separate notices of federal tax liens alleging certain assessed and unpaid federal tax liabilities against the Debtor.  On September 29, 2005, the IRS filed

---

[1] "Permitted Liens" as defined by the loan agreement between Debtor and MLBFS are:

> (I) liens for current taxes not delinquent, other non-consensual liens arising in the ordinary course of business for sums not due, and, if MLBFS' rights to and interest in the Collateral are not materially and adversely affected thereby, any such liens for taxes or other non-consensual liens arising in the ordinary course of business being contested in good faith by appropriate proceedings; (ii) liens in favor of MLBFS; (iii) liens which will be discharged with the proceeds of the initial WCMA Loan; and (iv) any other liens expressly permitted in writing by MLBFS.

(See Loan and Security Agreement between the Debtor and MLBFS dated March 13, 2001).

Page 4
March 28, 2006

a proof of claim in the amount of $1,493,460.72 categorized as follows: (a) a secured claim of $572,500.77;

(b) an unsecured priority claim of $688,336.12; and (c) an unsecured general claim of $232,623.83.

On July 21, 2005, the Debtor filed a "Motion Approving the Use of Cash Collateral of MLBFS,

Providing Adequate Protection and Setting a Final Hearing Pursuant to Fed. R. Bankr. P. 4001."[2]   In its

motion, the Debtor argued that "[w]ithout the emergent use of MLBFS' cash collateral, specifically in the form

of accounts receivable, [it would] be unable to pay salaries, rent, utilities and other operating expenses

associated with the wind-down of its business."  The Debtor further argued that the use of the cash collateral

was necessary to "preserve and maximize the value of its assets."  Noting that 11 U.S.C. § 363(e) requires

that the debtor provide adequate protection for an entity that has interest in property to be used by the debtor,

the Debtor proposed adequate protection for MLBFS in the form of replacement liens and cash payments

from the liquidation of its assets.  MLBFS agreed to the proposed adequate protection and consented to the

Debtor's use of the cash collateral in accordance with the proposed budget attached to the Debtor's motion.

This Court granted the Debtor's motion and on July 25, 2005, entered an "Interim Order Authorizing

Use of Cash Collateral" ("Interim Order) and set a final hearing date of August 16, 2005.  No objections were

filed or heard as to the Interim Order.  The Interim Order stipulated that written objections were to be filed

on or before August 10, 2005, and that the Interim Order be served upon the United States Trustee, the

District Director of the Internal Revenue Service, the New Jersey Division of Taxation, MLBFS and the

---

[2]The Debtor served the motion seeking an interim and final order for the use of cash collateral
upon the IRS at offices located in Cincinnati, Ohio and Philadelphia, Pennsylvania.  In its motion for
adequate protection, the IRS does not state that it failed to receive service of the motion for cash
collateral.

Page 5
March 28, 2006

Debtor's twenty largest unsecured creditors.  On July 25, 2005, these parties were served with the Interim

Order. [3]   Soon thereafter, by letter dated August 10, 2005, the IRS notified Debtor's counsel that it "[did]

not consent to the use of its cash collateral by the debtor" and proposed a "Stipulation Regarding the Use of

Cash Collateral and Adequate Protection."  The IRS did not file a copy of this letter with the Court, nor did

it file a formal objection to the use of cash collateral.  On August 16, 2005, a final hearing was held in this

Court without any objector appearing in opposition to the entry of a final order.[4]  Following the August 16,

2005 hearing, the Court entered a "Final Order Authorizing Use of Cash Collateral."

On October 28, 2005, the IRS filed the within motion.  As noted, the Debtor filed an objection to the

motion which was joined by MLBFS.

## II.    Legal Discussion

The Debtor sets forth two principal objections to the motion filed by the IRS.  First, the Debtor

contends that the motion is an improper collateral attack upon the Final Cash Collateral Order and, as such,

must be denied.  Second, the Debtor submits that the IRS is a "wholly unsecured creditor" of the Debtor and

is therefore not entitled to adequate protection under the Bankruptcy Code.  For the following reasons, the

motion filed by the IRS is hereby denied.

---

[3]The Debtor served a copy of the Interim Order upon the District Director of the IRS located in
Jersey City, New Jersey.  The Debtor also served copies upon the IRS at its offices located in
Cincinnati, Ohio, Philadelphia, Pennsylvania, and Pittsburgh, Pennsylvania.  In its motion for adequate
protection, the IRS does not state that it failed to receive proper notice of the Interim Order, which
established the date of August 10, 2005 as the final hearing date for approving the Debtor's use of cash
collateral.

[4] The only formal objection filed in this matter was by Ford Motor Company, which was
withdrawn prior to the hearing date.

Page 6
March 28, 2006

### A.    Collateral Attack Upon A Final Order

Through its motion the IRS seeks to deny the Debtor's use of its cash collateral.  However, the Debtor

has been granted permission to use the cash collateral pursuant to the Final Cash Collateral Order entered by

this Court on August 16, 2005.  Significantly, the IRS never filed an objection to the entry of the Final Cash

Collateral Order despite notice of the then upcoming hearing. In addition, the IRS failed to final a notice of

appeal or motion for reconsideration following the entry of the Final Cash Collateral Order.  The Final Cash

Collateral Order is not now subject to appeal or reconsideration as Federal Rule of Bankruptcy Procedure

8002(a) provides that "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of

the judgment, order, or decree appealed from." See Fed. R. Bankr. P. 8002(a) (West 2006).  Thus, the Final

Cash Collateral Order became a final, non-appealable order ten days after it was entered by the Court.  See

Lorenz v. Am. Educ. Servs. (In re Lorenz), 337 B.R. 423 (B.A.P. 1st Cir. 2006) (noting that a bankruptcy

court order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the

judgment'") (citation omitted).  Although the contours of a bankruptcy case make its application somewhat

more difficult than in other contexts, the doctrine of *res judicata* is "fully applicable to bankruptcy court

decisions." Fox v. Congress Fin. Corp. (In re Target Indus., Inc.), 328 B.R. 99, 115 (Bankr. D.N.J. 2005)

(citing Katchen v. Landy, 382 U.S. 323, 334, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)).  The doctrine of *res*

*judicata* is applicable to final orders issued by a bankruptcy court, and has been held applicable to financing

orders. Id. (citing NovaCare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute

Network, Inc.), 267 B.R. 46, 52-53 (Bankr. D. Del. 2001).

Page 7
March 28, 2006

In this instance, the IRS failed to timely object and protect its rights as specifically set forth by this

Court with regard to the Debtor's original motion seeking the cash collateral order.  Upon the Debtor's

motion, this Court set an objection period and a final hearing date.  The IRS failed to file an objection within

the objection period, failed to appear and oppose the entry of the Final Cash Collateral Order, and made no

attempt to obtain any protection from this Court prior to its entry despite receiving adequate notice.  As a

consequence of its lackadaisical position regarding the Debtor's application to use cash collateral, the Final

Cash Collateral Order has become a final order for *res judicata* purposes, and the IRS cannot now challenge

that Order through a subsequent motion.

**B.    Unsecured Status of the IRS's Claim**

As an alternative basis for denying the IRS's motion, the Debtor correctly submits that the IRS is an

unsecured creditor and therefore, not entitled to adequate protection under the Bankruptcy Code.  As of the

petition date, the Debtor owed MLBFS $2,219,661.61, but only had assets approximating $1,422,500.  The

Interim Cash Collateral Order found that MLBFS made a *prima facie* showing that it holds valid, perfected

first priority liens in substantially all of the Debtor's property.  Section 506(a) of the Bankruptcy Code provides

as follows:

> An allowed claim of a creditor secured by a lien on property in which the
> estate has an interest, or that is subject to setoff under section 553 of this title,
> is a secured claim to the extent of the value of such creditor's interest in the
> estate's interest in such property, or to the extent of the amount subject to
> setoff, as the case may be, and is an unsecured claim to the extent that the
> value of such creditor's interest or the amount so subject to setoff is less than
> the amount of such allowed claim. Such value shall be determined in light of
> the purpose of the valuation and of the proposed disposition or use of such

Page 8
March 28, 2006

property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

[11 U.S.C. § 506(a) (West 2006)].

As the Debtor correctly argues, under § 506(a) the amount of a secured claim is limited by the value of the collateral. Because the Debtor's assets are insufficient to fully satisfy the secured claims of MLBFS, the IRS possesses only an unsecured claim since "the value of the collateral securing the IRS' liens is zero after taking into account the senior liens of MLBFS." As an unsecured creditor of the Debtor, the IRS is not entitled to adequate protection. See Chama, Inc. v. First N. Bank & Trust (In re Chama, Inc.), 265 B.R. 662, 669 (Bankr. D. Del. 2000) (noting that unsecured creditors are not entitled to adequate protection); Emplexx Software Corp. v. AGI Software, Inc. (In re AGI Software, Inc.), 199 B.R. 850, 861 (Bankr. D.N.J. 1995) (citations omitted). Consequently, even if the Final Cash Collateral Order cannot be considered a "final" order for purposes of preclusion, the IRS's motion must still be denied because adequate protection is an unavailable remedy.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,


**s/ Donald H. Steckroth**

DONALD H. STECKROTH

UNITED STATES BANKRUPTCY JUDGE

Enclosure